UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE GORDON, Derivatively on Behalf of NAVIGANT CONSULTING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WILLIAM M. GOODYEAR, JULIE M. HOWARD, THOMAS A. NARDI, MONICA M. WEED, THOMAS A. GILDEHAUS, CYNTHIA A. GLASSMAN, STEPHAN A. JAMES, PETER B. POND, SAMUEL K. SKINNER, JAMES R. THOMPSON and MICHAEL L. TIPSORD, | ) ) ) ) ) ) ) ) | 12 C 369 |
| Defendants, | ) ) ) | |
| and | ) ) | |
| NAVIGANT CONSULTING, INC., | ) ) | |
| Nominal Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Natalie Gordon has filed a shareholder derivative complaint on behalf of

nominal defendant Navigant Consulting, Inc. ("Navigant") against Defendants William M.

Goodyear, Thomas A. Gildehaus, Cynthia A. Glassman, Stephan A. James, Michael L. Tipsord,

Peter B. Pond, Samuel K. Skinner, Thomas A. Nardi, Julie M. Howard, and Monica M. Weed

(collectively, the "Individual Defendants"). All Defendants have moved to dismiss the case

pursuant to Federal Rule of Civil Procedure ("Rule") 23.1. In addition, Defendants Goodyear,

Howard, Nardi, and Weed have moved to dismiss the complaint pursuant to Rule 12(b)(6). For

the reasons discussed in detail below, the Court grants the motion and dismisses the case without prejudice.

## FACTUAL ALLEGATIONS

Plaintiff Natalie Gordon, who owns Navigant common stock, has brought this shareholder derivative suit against the Navigant Board of Directors (the "Board") and various officers. She alleges that the Board awarded "excessive executive compensation despite the fact that Navigant shareholders have seen the value of their investment plummet." (R. 1, Compl. ¶ 2.) Plaintiff avers that each individual director and officer of Navigant owed Navigant and its shareholders fiduciary obligations of trust, loyalty, good faith and due care. She further alleges that they breached their duties and financial obligations and failed to act in the best interests of Navigant and its shareholders.

## I.      Navigant Executives

Navigant is a "speciality consulting firm which provides dispute, investigative, economic, operational, risk management, and financial and risk advisory solutions to government agencies and companies." (*Id.* ¶ 11.) Defendant Goodyear has served as Navigant's Chairman of the Board of Directors and Chief Executive Officer ("CEO") since May 2000. Defendant Howard has served as the President of Navigant since February 2006 and has been the Chief Operating Officer ("COO") of Navigant since 2003. (*Id.* ¶ 13.) Plaintiff alleges that Defendant Howard "has responsibility for the day to day management of company profitability, including compensation strategy." (*Id.*) She also leads the company's annual strategic planning and budgeting cycle and participates in its quarterly Board meetings. (*Id.*) Defendant Nardi is Navigant's Executive Vice President and the Chief Financial Officer

("CFO"). (*Id.* ¶ 14.) Defendant Weed is Navigant's Vice President, General Counsel and Corporate Secretary. She has served in this role since November 2008. (*Id.* ¶ 15.)

## II. The Navigant Board of Directors

Navigant's Board of Directors was comprised of eight Directors during the relevant time period: Goodyear, Gildehaus, Glassman, James, Pond, Skinner, Thompson, and Tipsord. Defendant Goodyear is the only Director who is also an Executive of Navigant. The other seven Directors on the Board are outside Directors.

Defendant Gildehaus is a Director of Navigant, a role in which he has served since October 2000. (*Id.* ¶ 16.) In 2010, Gildehaus served as the Chair of the Board's Audit Committee, and as a member of the Compensation Committee of the Board of Directors (the "Compensation Committee"). (*Id.*) Defendant Glassman is another Director of the company, and has served in this position since October 2009. She served as a member of the Board's Compensation Committee and its Nomination and Governance Committee in 2010. (*Id.* ¶ 17.) Since January 2009, Defendant James has also served as a Director. In 2010, James was a member of the Compensation Committee and its Audit Committee. Defendant Tipsord has served as a Director of the Board since July 2009. In 2010, he also served as a member of the Compensation Committee and the Audit Committee. (*Id.* ¶ 19.) In addition, Defendant Pond is a Director of Navigant. He has served in this role since November 2006. (*Id.* ¶ 20.) He is Chair of the Nomination and Governance Committee, and is also a member of the Board's Audit Committee. (*Id.*) Defendant Skinner has been a Director of the company since December 1999. (*Id.* ¶ 21.) Skinner is also a member of the Executive Committee. (*Id.*) Defendant Thompson

has served as a Director of Navigant since August 1998. He serves as the Chair of the Executive Committee and is a member of the Board's Nominating and Governance Committee. (*Id.* ¶ 22.) Plaintiff alleges that each of the individual Defendants owed Navigant and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, "and were and are required to use their utmost ability to control and manage Navigant in a fair, just, honest and equitable manner." (*Id.* ¶ 24.) Given their positions as directors and/or officers of Navigant, they have a duty to "act in furtherance of the best interests of Navigant and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit." (*Id.*)

Navigant's Compensation Committee Charter (the "Charter") sets forth the duties and responsibilities of the Compensation Committee. (*Id.* ¶ 28.) In 2010, the Compensation Committee consisted of Defendants Gildhaus, Glassman, James, and Tipsord. (*Id.*) Pursuant to the terms of the Charter, the Compensation Committee must "review and recommend to the Board compensation policies as well as approve individual executive officer compensation, intended to attract, retain and appropriately reward employees in order to motivate their performance in the achievement of the Company's business objectives and align their interests with the long-term interest of the Company's shareholders . . . ." (*Id.* ¶ 29.) The Charter directs the Compensation Committee to consider a number of factors when assessing the incentive component of executive payment. These factors include, but are not limited to "the Company's performance and relative shareholder return, the value of similar incentive awards to chief executive officers at comparable companies, and the awards given to the Company's Chief Executive Officer in past years. (*Id.* ¶ 30.)

### III.  Navigant's Financial Results and Executive Compensation

Plaintiff alleges that, from January 2006 until December 2010, Navigant's share price fell from over $21 per share to $9.20 per share.  (*Id.* ¶¶ 2, 36.)  Navigant posted a negative 38.1 percent shareholder return in 2010, which "capped off a three year return of negative 12.4 percent."  (*Id.* ¶¶ 3, 38.)  Plaintiff alleges that Navigant significantly underperformed both the S&P 500 Total Returns Index and the "business Services" industry performance between 2006 and 2010.  (*Id.* ¶ 37.)  Plaintiff alleges that the Board members approved pay increases and or cash bonuses for Navigant's top executive officers in 2010 "[d]espite Navigant's dismal financial results, which included a negative 38.1 percent shareholder return over the past year."  (*Id.* ¶ 17.)  According to Plaintiff, the total 2010 combined compensation for Defendants Goodyear, Howard, Nardi and Weed totaled in excess of $4.8 million.  (*Id.* ¶ 42.)  Of this amount, $725,000 consisted of cash bonus awards.  (*Id.* ¶ 43.)  Navigant paid Defendant Goodyear approximately $1.9 million in 2010, which included a $275,000 annual cash bonus award.  (*Id.* ¶ 12.)  As part of her 2010 compensation, it also paid Defendant Howard more than $1.3 million, including a $200,000 annual cash bonus award.  (*Id.* ¶ 13.)  Defendant Nardi received more than $900,000 in compensation for 2010, including a pay increase of over $222,000 and a $150,000 cash bonus award.  (*Id.* ¶ 14.)  In addition, Navigant paid Defendant Weed more than $755,000 in compensation for 2010, including a $100,000 cash bonus.  She also received a pay increase of more than $148,000.  (*Id.* ¶ 15.)

### IV.  The Shareholder Proxy

On March 16, 2011, Navigant issued and filed a Proxy Statement with the United States Securities and Exchange Commission ("SEC").  (*Id.* ¶ 50.)  Pursuant to the Dodd–Frank Wall

Street Reform and Consumer Protection Act ("Dodd–Frank Act")[1], in the Proxy Statement, the

Board recommended that the shareholders approve the compensation that Navigant paid to its

executive officers in 2010. The Proxy informed the shareholders that their vote on the

compensation was non-binding on both Navigant and its Board. The Proxy, which Navigant sent

to its shareholders, specifically provided:

### ADVISORY VOTE ON EXECUTIVE COMPENSATION

Pursuant to recently-enacted Section 14A of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), we are providing our shareholders with a vote to approve, on an advisory basis, the compensation paid to our named executive officers as disclosed in this Proxy Statement. This advisory vote on executive compensation is commonly referred to as a "say-on-pay" vote.

The guiding principle of our executive compensation philosophy is "pay for performance." Our executive compensation program has been designed to reward the achievement of annual and long-term performance goals and align our named executive officers' interests with those of our shareholders, with the ultimate objective of improving long-term shareholder value. This pay for performance philosophy informs our executive compensation program design as well as the compensation committee's determination of compensation levels for each of our named executive officers.

This pay for performance philosophy guided our executive compensation decisions for 2010, as evidenced by the following:

> • *Base Salary* — Our named executive officers received no salary increase in 2010. Based on our peer group benchmarks, as well as individual and company performance assessments for 2010, the compensation committee did not approve any salary increases for our named executive officers for 2011. As a result, the base salaries for our named executive officers have remained unchanged for the last three years.

> • *Annual Performance-Based Cash Bonus* — **Cash bonuses for our named executive officers, in the aggregate, were awarded at 37% of target for 2010,**

---

[1] The Dodd–Frank Act, which added a new section 14A to the Securities Exchange Act of 1934, requires public companies to allow their shareholders to conduct a non-binding vote on executive compensation at least once every three years. 15 U.S.C. § 78n–1.

*reflecting the fact that the company's financial performance during 2010 only partially met the Board's expectations with respect to revenue growth and EBITDA (and did not meet expectations with respect to net income and earnings per share)*, despite the company largely achieving its strategic goals for 2010. *Consideration was also given to the fact that the company's stock price performance was below the average for its peer group during 2010.*

• *Long-Term Equity-Based Incentive Compensation* — The company's overall performance for 2010 was also a significant factor in determining the value of the equity-based incentive awards granted to our named executive officers for the 2010 performance year. The value of these grants was well below the 50th percentile of our peer group and represented more than a 50% decrease from the value of the prior year's grants.

These decisions resulted in a decrease, both individually and in the aggregate, in the total direct compensation to our NEOs for 2010 as compared to 2009, and positioned total direct compensation in the bottom decile of our peer group. We believe these decisions demonstrate our commitment to aligning our executive compensation with performance and our shareholders' interests.

We urge you to read the section entitled "Compensation Discussion and Analysis" in this Proxy Statement for additional details on our executive compensation program, including our executive compensation philosophy and objectives and the 2010 compensation of our named executive officers.

*We are asking our shareholders to indicate their support for our executive compensation program by voting "FOR" the following resolution at the annual meeting:*

"RESOLVED, that the company's shareholders approve, on an advisory basis, the compensation paid to the company's named executive officers, as disclosed in the Proxy Statement pursuant to the compensation disclosure rules of the Securities and Exchange Commission, including the Compensation Discussion and Analysis and the compensation tables and related narrative discussion."

The say-on-pay vote is an advisory vote only, and therefore, it will not bind the company or the Board. However, *the Board and the compensation committee will consider the voting results as appropriate when making future compensation decisions for our named executive officers.*

**The Board and the compensation committee recommend that shareholders vote "FOR" the approval of the advisory resolution relating to the compensation paid to our named executive officers as disclosed in this Proxy Statement.**

(*Id.* ¶ 50.)

According to Plaintiff, on March 31, 2011, ISS Proxy Advisory Services ("ISS") a leading proxy advisory service, recommended that shareholders vote against the Board's executive compensation proposal. The ISS based its recommendation on a finding that "there is a misalignment of CEO pay and company stock performance." (*Id.* ¶ 51.)

## V.  The Shareholder Meeting

On April 25, 2011, Navigant held its 2011 Annual Meeting of Shareholders. At that meeting, over 55% of Navigant's voting shareholders rejected the compensation package for Navigant's executive management for fiscal year 2010. (*Id.* ¶¶ 52, 55.) According to Plaintiff, Navigant's shareholder base "consists overwhelmingly of sophisticated institutional investors who own millions of Navigant shares" and who "possess the experience, expertise and resources to assess, in their own independent business judgment, what amount of executive compensation is in their best interests as shareholder owners." (*Id.* ¶ 54.) Plaintiff alleges that the shareholders' rejection of the 2010 compensation package is "direct and probative evidence that the 2010 executive compensation was not in the best interests of Navigant shareholders, and correspondingly that the Board did not act in the best interests of Navigant shareholders when approving it." (*Id.* ¶ 56.) As a result of the Board's approval of the excessive 2010 executive compensation, Plaintiff alleges that Navigant and its shareholders have been damaged.

## VI.  Plaintiff Did Not Make a Demand on the Board

According to Plaintiff, she did not make any demand on the Board to institute this action "because such a demand would have been [a] futile, wasteful and useless act, since the entire Board would be incapable of evaluating such a demand in a disinterested and independent

8

manner." (*Id.* ¶ 62.) She alleges that a pre-suit demand is excused because "the entire Board

faces a substantial likelihood of liability for breach of loyalty." (*Id.*) In addition, Plaintiff

asserts that the majority of the Board are also members of the Compensation Committee and thus

incapable of evaluating a pre-suit demand in a disinterested and independent manner. (*Id.* ¶ 63.)

She further alleges that Defendant Goodyear's principal profession is his employment as CEO of

Navigant, and thus any pre-suit demand on him is excused. (*Id.* ¶ 64.) Because he receives and

continues to receive substantial monetary compensation, Plaintiff alleges that Defendant

Goodyear lacks the appropriate independence to impartially consider a demand. (*Id.*)

## LEGAL STANDARD

Plaintiff brings a shareholder derivative compliant on behalf of nominal Defendant

Navigant and the Individual Defendants. Defendants move to dismiss the Complaint in its

entirety pursuant to Federal Rule of Civil Procedure 23.1. Alternatively, Goodyear, Howard,

Nardi, and Weed move to dismiss Count I against them pursuant to Rule 12(b)(6) for failure to

state a claim.

**I.     Rule 23.1**

Rule 23.1(b)(3) requires that a plaintiff bringing a shareholder derivative action state

with particularity the following:

(A)     any effort by the plaintiff to obtain the desired action from the directors or
        comparable authority and, if necessary, from the shareholders or members;
        and

(B)     The reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3).

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to

dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs'

substantive claim. 'Rather, its purpose is to determine who is entitled, as between the

corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the

corporation's behalf.'" *In re Veeco Instruments, Inc. Sec. Litig.,* 434 F. Supp. 2d 267, 273

(S.D.N.Y. 2006) (quoting *Levine v. Smith*, No. 8833, 1989 WL 150784, at *5 (Del. Ch. Nov. 27,

1989), *aff'd* 591 A.2d 194 (Del. 1991), *overrruled on other grounds by Brehm v. Eisner*, 746

A.2d 244 (Del. 2000)).   The law of the state of the corporation's incorporation governs whether

a demand may be excused when a shareholder files a derivative suit on behalf of a company.

*Kamen v. Kemper Fin. Servs., Inc.* 500 U.S. 90, 98-99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

*See also In re: Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003)

("Because Abbott was incorporated under the laws of Illinois, Illinois law applies in determining

whether a demand may be excused when shareholders file a derivative complaint on behalf of

the company.")

## II.     Rule 12(b)(6)

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*AnchorBank*, 649 F.3d at 614 (internal quotation and citation omitted). Pursuant to Rule 8(a)(2),

a complaint must include "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct.

99, 2 L. Ed. 2d 80 (1957)).

 "In evaluating the sufficiency of the complaint, [courts] view it in the light most

favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all

possible inferences from the allegations in the plaintiff's favor." *AnchorBank,* 649 F.3d at 614.

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face . . . .  A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Indep. Trust Corp. v. Stewart Info.*

*Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted)).  "The complaint

'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a

right to relief above the speculative level.'" *Id.* at 935 (citing *Windy City Metal Fabricators &*

*Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir.  2008)).  "[A] plaintiff's claim

need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely.'" *Id.* (citing *Twombly*, 550 U.S. at 556 (internal quotation omitted)).  "To meet this

plausibility standard, the complaint must supply 'enough fact[s] to raise a reasonable expectation

that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* (citing *Twombly*,

550 U.S. at 556).

**ANALYSIS**

Plaintiff's shareholder derivative suit asserts a claim of breach of a fiduciary duty of

loyalty against the Individual Defendants and unjust enrichment against Defendants Goodyear,

Howard, Nardi, and Weed.   As the Seventh Circuit teaches:

> A derivative suit permits a shareholder to bring an action on behalf of a corporation. *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).  A derivative suit has dual aspects: first, the stockholder's right to sue on behalf of the corporation; and second, the claim of the corporation against directors or third parties.  *Id.*  The corporation is a necessary party to the action; without it the case cannot proceed.  *Id.*  Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff.  *Id.*  Preconditions for a derivative action include both a valid claim on which the corporation could have sued, and that the corporation itself has refused to proceed after suitable demand, unless excused by extraordinary conditions.  *Id.* at 534, 90 S.Ct. 733.

*Hale v. Victor Chu*, 614 F.3d 741, 743 (7th Cir. 2010).  Because Navigant is incorporated under

the laws of Delaware[2], Delaware law applies in determining whether a demand may be excused

---

[2] Plaintiff's Complaint alleges that Navigant is incorporated under the laws of Illinois. Defendant notes that Navigant is not incorporated in Illinois, but instead is incorporated in Delaware.  (R. 34, Memo at n.3.)  Plaintiff concedes that Navigant is incorporated in Delaware and agrees that Delaware law applies.  (R. 41 at 9 n.6.)  Indeed, Navigant's Proxy Statement represents that Navigant is incorporated in Delaware.  (R. 34-3, Ex. B, Proxy Statement at 47. ) In addition, the Secretary of State of the State of Delaware has issued an Amended and Restated Certificate of Incorporation certifying that Navigant is incorporated under the State of Delaware. (R. 34-2, Ex. A.)  The Court can take judicial notice of these documents for purposes of the motion to dismiss.  *See* Fed. R. Evid. 201; *Geinosky v. City of Chicago*, 675 F.3d 743, 746 n.1 (7th Cir. 2012) (stating that the court may consider matters of public record on a motion to dismiss) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)); *Seidel v. Byron*, 405 B.R. 277, 284-85 (N.D. Ill. 2009) (taking judicial notice of a certificate of incorporation on a motion to dismiss); *accord McCall v. Scott*, 239 F.3d 808, 814 n.3 (6th Cir. 2001) (taking judicial notice of restated certificate of incorporation); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed"); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1265 (N.D. Cal. 2010) (collecting cases).

when shareholders file a derivative suit on behalf of a company. *See Kamen,* 500 U.S. at 98-99.

## I. The Demand Requirement Under Delaware Law

Under Delaware law, "directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation." *Levine*, 591 A.2d at 200. Given the director's role, Delaware law requires a pre-suit demand on the corporation's board of directors unless such a demand would be futile. *See Rales v. Blashband*, 634 A.2d 927, 932 (Del. 1993) ("Because directors are empowered to manage, or direct the management of, the business affairs of the corporation . . . , the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation"); *Louisiana Mun. Police Emp.' Ret. Sys. v. Pyott*, __ A.3d __, 2012 WL 2087205 (Del. Ch. June 11, 2012) (same). The demand requirement "exists to preserve the primacy of board decisionmaking regarding legal claims belonging to the corporation." *In re American Int'l. Grp., Inc.*, 965 A.2d 763, 808 (Del. Ch. 2009) (citing *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984)).

The Supreme Court of Delaware has articulated a two-prong test for determining the futility of a demand on the directors. *Aronson*, 473 A.2d 805, *overruled on other grounds by Brehm*, 746 A.2d 244. Specifically, a demand on the board is futile where "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814. The plaintiff bears the burden of establishing the futility

requirements.  If a plaintiff can satisfy either prong of the *Aronson* test, demand is excused. *Brehm*, 746 A.2d at 256 (*Aronson* prongs are in the "disjunctive," thus "if either prong is satisfied, demand is excused.")

Plaintiff concedes in her Complaint that she has not made a demand on Navigant's Board of Directors as required under Delaware law.  If Plaintiff has sufficiently alleged that such a demand would have been futile, the demand requirement is excused.  *Aronson*, 473 A.2d at 808.

## II.  Plaintiff Has Failed to Plead Demand Futility

### A.  Plaintiff Has Not Met the First Prong of *Aronson*

Under the first prong of the *Aronson* test, Plaintiff must allege with particularity sufficient facts to raise a reasonable doubt that a majority of the board is disinterested or independent.  *.Id.* at 812.  A disinterested director "can neither appear on both sides of a transaction nor expect to derive any personal benefit from [the challenged transaction] in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally."  *Id.*  Further, "[a] director's independence exists when "a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Id.* at 816.  In addition, a "director . . . is not independent if the director is 'beholden' to another such that the director's decision would not be based on the merits of the subject before her."  *Rales*, 634 A.2d at 936.

Plaintiff has failed to meet her burden of alleging that a majority of the Directors are interested or not independent.  She has alleged that only one of the eight Directors–Defendant Goodyear–personally benefitted from the Board's approval of the executive compensation

14

package. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 365 (Del. 1993) ("This Court has never held that one director's colorable interest in a challenged transaction is sufficient, without more, to deprive a *board* of the protection of the business judgment rule presumption of loyalty") (emphasis in original). The other seven Directors were outside Directors who did not hold a position with Navigant and did not receive any of the pay at issue. *See Iron Workers Local No. 25 Pension Fund ex rel. Monolithic Power v. Bogart*, No. 11-4604, 2012 WL 2160436, at *3 (N.D. Cal. June 13, 2012) (plaintiff failed to meet first prong of *Aronson* where plaintiff "contends that at best only two of the seven board members . . . personally benefitted from the challenged compensation decision.") This is especially true because Plaintiff has not alleged that Defendant Goodyear was on the Board's Compensation Committee or played any role in setting his 2010 compensation. She also has not alleged that he dominated the Board or that he held the Board under his influence such that the majority of its members were not independent. *Levine*, 591 A.2d at 205. In addition, she has not alleged that a majority of the board appeared on both sides of the transaction. *See Aronson*, 473 A.2d at 812.

In her response, Plaintiff asserts that the Board members acted "disloyally to enhance the selfish interests of themselves and/or fellow directors." (Response at 2.) Plaintiff's Complaint, however, does not contain any such allegations. Moreover, it does not contain any facts to support Plaintiff's bold assertion in her response. The Complaint also does not allege that any of the outside Directors received any personal benefit from the executive compensation decisions, nor does it assert that they took action for any selfish reasons.

Plaintiff further argues that she has met her burden under this prong of *Aronson* because the Defendant Directors approved the 2010 executive compensation package and thus "face[] a

substantial likelihood of liability for breach of loyalty for authorizing the 2010 executive compensation." (Compl. ¶ 63.) Under Delaware law, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors . . . ." *Aronson*, 473 A.2d at 815. *See also MCG Capital Corp. v. Maginn,* No. 4521-CC, 2010 WL 1782271, at *16 (Del. Ch. May 5, 2010); *In re Citigroup Inc. S'holder Derivative Litig.,* 964 A.2d 106, 115 n.6 (Del. Ch. 2009). Instead, courts will excuse the demand requirement under this prong of the *Aronson* test only in "rare cases" where the transaction is "so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *Aronson*, 473 A.2d at 815. This is not one of the "rare cases" in which the Court will excuse the demand requirement, however, because Plaintiff has not pled that the Defendant Directors face a "substantial likelihood" of liability for breach of loyalty. *Id.*

Under Delaware law, the duty of loyalty requires that "the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co.*, 634 A.2d at 361 (citations omitted). "Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." *Id.* at 361-62. The fiduciary duty of loyalty involves a "financial or other cognizable fiduciary conflict of interest," and "encompasses cases where the fiduciary fails to act in good faith." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Indeed, "[t]he requirement to act in good faith is a 'subsidiary element[,]' i.e., a condition, 'of the fundamental duty of loyalty.'" *Id.* (quoting *Guttman v.*

16

*Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003)).

Plaintiff's allegations are insufficient to establish a substantial likelihood of liability for breach of a duty of loyalty on the part of the Defendant Directors. As noted above, Plaintiff's Complaint does not allege that seven of the eight members of the Board received any personal benefit from the executive compensation package or that the seven outside Directors appeared on both sides of the transaction[3]. *See Laborers' Local v. Intersil*, No. 11-cv-4093, 2012 WL 762319, at *5 (N.D. Cal. Mar. 7, 2012) (plaintiff failed to meet first prong of *Aronson* test where only one director received a personal benefit form the compensation decision). Furthermore, the Complaint does not include particularized allegations to support a substantial likelihood of establishing that the Directors acted in bad faith, and indeed Plaintiff has failed to argue otherwise in response to Defendants' motion.

### B. Plaintiff Has Not Rebutted the Presumption of the Business Judgment Rule

The second prong of the *Aronson* test involves the business judgment rule. Under Delaware law, the business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Aronson*, 437 A.2d at 812. Plaintiff has the burden of rebutting this presumption through particularized allegations. *Id.* Specifically, in order to plead demand futility under this prong of the *Aronson* test, Plaintiff must allege particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in

---

[3] It is also notable that the Executive base pay did not increase from 2009 to 2012.

making the decision." *J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005) (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)).

The business judgment rule generally protects compensation decisions. *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008). Under Delaware law, a board's decision regarding executive compensation is "entitled to great deference." *Brehm*, 746 A.2d at 263. Courts' deference to directors' "business judgment is particularly broad in matters of executive compensation." *Freedman v. Adams*, No. 4199-VCN, 2012 WL 1099893, at *14 (Del. Ch. Mar. 30, 2012) (quoting *Walt Disney*, 825 A.2d at 362). Indeed, "it is the essence of business judgment for a board to determine if 'a particular individual warrant[s] large amounts of money, whether in the form of current salary or severance provisions.'" *Brehm*, 746 A.2d at 263.

Plaintiff contends that the Complaint sufficiently rebuts the presumption of the business judgment rule under the second prong of *Aronson*. In her Complaint, Plaintiff primarily relies on the negative shareholder vote to rebut the presumption. In response to the motion, Plaintiff adds additional factors and asserts that the following factors rebut the presumption: 1) the say-on-pay negative shareholder vote under Dodd-Frank; 2) the Directors' alleged violation of the company's policy of "carefully linking executive pay to company performance"; and 3) the Directors increase of compensation when the company's performance was decreasing. Even taken together, however, these factors are insufficient to meet Plaintiff's burden of rebutting the business judgment rule presumption.

### 1. Say-on-Pay Vote

The thrust of Plaintiff's Complaint relies on a negative vote on April 26, 2011 pursuant to the Dodd-Frank Act, in which Navigant's shareholders voted against the compensation that

18

Navigant paid to its executives in 2010.

The Dodd-Frank Act became law in July 2010.  The stated purpose of the law is to "promote the financial stability of the United States by improving accountability and transparency in the financial system, to end 'too big to fail', to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes."  Pub. L. No. 111-203, Stat. 1376 (2010).  Section 951 of the Dodd-Frank Act requires publicly-traded companies to permit shareholders to vote on executive compensation at least once every three years.  15 U.S.C. § 78n-1.  It specifically provides that the shareholder vote "shall not be binding on the issuer or the board of directors."  *Id.* § 78n-1(c).  Further, the vote "may not be construed" as follows:

(1)     as overruling a decision by such issuer or board of directors;

(2)     to create or imply any change to the fiduciary duties of such issuer or board of directors;

(3)     to create or imply any additional fiduciary duties for such issuer or board of directors; or

(4)     to restrict or limit the ability of shareholders to make proposals for inclusion in proxy materials related to executive compensation.

*Id.*

The plain language of the statute makes clear that the shareholders vote is non-binding on the corporation and that it does not create or imply any change in the board members' fiduciary duties.  *See Jimenez v. Quarterman*, 555 U.S. 113, 118, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.") (citation omitted).  The Proxy Statement also made this non-binding status clear. (Compl. ¶ 55.)  Plaintiff's Complaint almost exclusively relies on the negative shareholder vote

to rebut the presumption. Plaintiff alleges the shareholder vote "is direct and probative evidence rebutting the presumption that the Navigant Board's executive compensation decisions were in the best interests of the Navigant shareholders." (*Id.* ¶ 56.) To the extent Plaintiff seeks to rely solely on the negative shareholder vote to rebut the business judgment rule, these allegations directly contradict the plain language of the statute. As explained above, the Dodd-Frank Act specifically provides that the non-binding shareholder vote does not "create or imply any change to the fiduciary duties" of the board members. Plaintiff's attempt in her Complaint to use the negative shareholder vote alone to rebut the business judgment rule and to excuse the demand requirement and permit her to pursue a breach of fiduciary claim against the directors circumvents the protections in the statute. Other courts applying Delaware law have held that negative say-on-pay votes alone do not provide a basis to permit a breach of fiduciary duty claim to survive a motion to dismiss. *See Bogart*, 2012 WL 2160436, at *4 ("the 64% negative vote by shareholders does not, on its own, rebut the business judgment presumption"); *Intersil,* 2012 WL 762319, at *5 (holding that a shareholder vote may be used as evidence for a court to determine whether a plaintiff has met the business judgment prong, but finding the vote insufficient to rebut the business judgment rule presumption where only 56% of shareholders disapproved of executive compensation package); *Plumbers Local No. 137 Pension Fund v. Davis,* No. 11-633-AC, 2012 WL 104776, at *5 (D. Or. Jan. 11, 2012).

Plaintiff's reliance on *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, No. 11-cv-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011), is misplaced. *Cincinnati Bell* involved the application of Ohio law, not Delaware law. Under Ohio law, the business judgement rule is an affirmative defense, not an element of excusing a demand on the Board.

The *Cincinnati Bell* court explicitly noted that in Ohio,

> the business judgment rule imposes a burden of proof, not a burden of pleading . . . . When plaintiffs allege a breach of fiduciary duty, the business judgment rule would impose on plaintiffs a burden at trial to present evidence to rebut the presumption the rule imposes. However, plaintiffs are not likewise obligated to plead operative facts in their complaint that would rebut the presumption.

*Id.* at *2. As such, courts applying Ohio law do not analyze the business judgment rule at the motion to dismiss stage. In contrast, as discussed above, under Delaware law, a plaintiff has the burden of rebutting the business judgment rule presumption through particularized allegations at the pleading stage. Plaintiff has not done so here.

### 2.    Company Policy

Plaintiff next argues that she has rebutted the business judgment rule based, in part, on allegations that the Directors violated the company's policy of "carefully linking executive pay to company performance." (Response at 10-11.) Plaintiff asserts that it is "uncontested that the Individual Defendants formulated and awarded executive compensation in 2010 that they knew w[as] not in compliance with the Company's compensation guidelines and w[as] not in the best interests of the Company." (*Id.* at 16.) The allegations in the Complaint, however, do not support this assertion. Indeed, Plaintiff alleges that the Compensation Committee Charter directed the Compensation Committee to "review and recommend to the Board compensation policies as well as approve individual executive officer compensation, intended to attract, retain and appropriately reward employees in order to motivate their performance in the achievement of the Company's business objectives and align their interests with the long-term interest of the Company's shareholders . . . ." (Compl. ¶ 29.) Furthermore, the Charter directed the Compensation Committee to consider a number of factors when assessing the incentive

component of executive payment, including, but not limited to "the Company's performance and relative shareholder return, the value of similar incentive awards to chief executive officers at comparable companies, and the awards given to the Company's Chief Executive Officer in past years." (*Id.* ¶ 30.)  The Complaint, however, focuses solely on the Company's performance and shareholder return, which is only part of the equation.  The Complaint does not, for example, contain any allegations pertaining to similar incentive awards to executives in Navigant's peer group, nor does it contain any facts regarding incentive awards that Navigant paid to its executives in past years.

Moreover, the Proxy upon which Plaintiff relies further directs the Compensation Committee to look at additional factors in determining its compensation recommendations.  The Proxy specifically describes other performance aspects that the Compensation Committee considered for 2010, including "net income and earnings per share," "strategic investment in core growth practice areas; senior level recruitment; and management's timely and effective response to changes in the competitive landscape." (*Id.* ¶ 50; R. 34-3, Proxy Statement at 16.[4]) Additionally, it is the Compensation Committee's practice to consider "individual performance in the area of the company over which [the executive] has direct responsibility" and "his or her individual contributions to the company's financial and strategic performance for the year in question." (*Id.* ¶ 34; R. 34-3, Proxy Statement at 15-16.).  Yet, the Complaint does not contain any allegations regarding these other factors.  Because Plaintiff's allegations do not contain any

---

[4]  The Court may consider the Proxy Statement in connection with Defendants' motion to dismiss, given that the Complaint cites extensively from it, it is central to Plaintiff's claim, and no party disputes its authenticity. *See Santana v. Cook County Bd. of Review*, 679 F.3d 614 (7th Cir. 2012).

facts regarding any of the other factors that the Committee considered in determining executive compensation, she has not established that Navigant violated company policy in awarding the executive compensation at issue in her Complaint. *See Intersil*, 2012 WL 762319 at * 6.

### 3. Stock Price Decrease

Plaintiff's reliance on the decrease in Navigant's stock price also does not excuse her failure make a demand on the Board. Her allegations do not set forth an extreme situation that overrides the great deference given to the board in making executive compensation decisions. *Brehm*, 746 A.2d at 263. The alleged facts do not give rise to an inference that the board members must have acted in bad faith or without an honest belief in the compensation they approved. *See In re Goldman Sachs Grp. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *14 (Del. Ch. Oct. 12, 2011) (dismissing derivative claim for breach of fiduciary duties regarding compensation levels, recognizing that the "decision as to how much compensation to retain and incentivize employees, both individually and in the aggregate, is a core function of a board of directors exercising its business judgment.")

Plaintiff has not rebutted the business judgment rule presumption based on a combination of the negative shareholder vote, Navigant's policy regarding executive pay, and Navigant's stock price. *See Bogart*, 2012 WL 2160436 at ** 4-5; *Intersil,* 2012 WL 762319, at *5; *Plumbers Local No. 137 Pension Fund*, 2012 WL 104776, at *5. Therefore, she has failed to establish that demand is futile in this case. Accordingly, the Court dismisses her claims against all Defendants.

**CONCLUSION**

For the reasons discussed above, the Court grants Defendants' motion to dismiss the

Complaint.

DATED: July 13, 2012                    ENTERED

_____

AMY J. ST. EVE
United States District Court Judge